**David P. Rossmiller, ISB No. 8591**
Email: drossmiller@chartwelllaw.com
THE CHARTWELL LAW OFFICES, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Telephone: 503-886-8108
Facsimile: 503-961-7864

*Attorneys for Plaintiff American Hallmark*
*Insurance Company of Texas*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS, a Texas Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>WRIGHT BROTHERS, THE BUILDING COMPANY, EAGLE LLC, an Idaho Limited Liability Company,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT**<br>**(DECLARATORY JUDGMENT)** |

For its Complaint against defendant Wright Brothers, The Building Company, Eagle LLC ("Wright Bros."), American Hallmark Insurance Company of Texas ("American Hallmark") alleges as follows:

**PARTIES**

1.    Plaintiff American Hallmark is a Texas corporation with its principal place of business located in Dallas, Texas. Therefore, Hallmark is a citizen of Texas. At all relevant times, Hallmark has been licensed and registered to write certain lines of insurance in Idaho.

Page 1– COMPLAINT

2.      Upon information and belief, Wright Bros. is an Idaho Limited Liability Company with its principal place of business located in Eagle, Idaho and with all of its Members being domiciled in Idaho.

## JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, the federal diversity jurisdiction statute.

4.      The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, because the potential indemnity sought in the Underlying Arbitration (defined below) is in excess of $5 million. Further, the Commercial General Liability (Each Occurrence) limit of liability on the Policy in controversy (defined below) is $1 million and the Commercial Umbrella Liability (Per Incident) limit of liability on the Policy in controversy is $5 million.

5.      Venue is proper in this court under 28 U.S.C. § 1391(b)(1) because, among other reasons, the Policy at issue in this matter was issued in this District and because the defendant is domiciled in this District.

## THE RELEVANT INSURANCE POLICIES

6.      American Hallmark issued an insurance policy, number 44-CL-000613521, which contained Commercial General Liability coverage and Commercial Umbrella Liability coverage, to named insured Wright Brothers, The Building Company, Eagle LLC, with relevant, consecutive annual policy periods effective from January 1, 2019 until January 1, 2021 (the "Policy"). Copies of the Policy are attached to this Complaint as Exhibit 1 (2019-2020 Policy) and Exhibit 2 (2020-2021 Policy).

7.      American Hallmark also issued the Policy for the annual policy periods between January 1, 2021 and January 1, 2024. These policy periods are not at issue in this Lawsuit.

## COMMON ALLEGATIONS

8.      Upon information and belief, on or about August 22, 2018, a company called BPX Commercial, Inc. aka BPX Commercial ("BPX") signed a contract with a company called McMillan Storage, LLC ("McMillan") to construct a 150,000 square foot self-storage facility.

9.      Upon information and belief, a demand for arbitration (the "Demand") was filed by McMillan and against BPX on or about April 30, 2020. The arbitration is AAA Case No. 01-20-0005-1179 (the "Underlying Arbitration").

10.     Upon information and belief, the Demand claimed that BPX "fraudulently or negligently induced McMillan Storage to hire BPX as GC for a storage facility in Meridian, ID. . . . BPX's work is incomplete, untimely, and defective, severely damaging McMillan Storage."

11.     Upon information and belief, the Demand alleges that BPX's principal "effectively offloaded his general contractor duties to another company (Wright Brothers The Building Company)."

12.     Upon information and belief, the Demand alleges:

> While the construction contract required that the Project be completed within 300 days from the date of the Agreement (June 18, 2019), as of April 30, 2020, the Project is far from physically completed and all the requisite approvals, including a significant one from Settlers Irrigation District, have yet to be obtained. Parts of the Project were constructed with materials of a lower quality than called for in the contract, without a credit to McMillan Storage. Most significantly, the Project is not in useable condition and is defectively built. . . .

13.     Upon information and belief, on or about May 18, 2020, BPX filed an Answer, Counterclaim and Request for Joinder in which it requested that Wright Bros. be added as a party to the Arbitration ("Joinder").

14.     Upon information and belief, the Joinder alleges that:

> Like most general contractors, BPX did not self-perform any of the actual construction work on the Project. Instead, it hired subcontractors to perform this work. BPX hired an experienced Idaho based general contractor to perform most of the construction work, including but not limited to, constructing the storage units. On or about September 11, 2018, BPX and Wright Brothers, The Building Company, Eagle LLC ("Wright Bros") executed a subcontract agreement ("Subcontract") whereby Wright Bros agreed "to furnish all labor, materials, installation, supplies, equipment, services, machinery, tools, water, heat, utilities, and other facilities of every kind and description required for the prompt and efficient [construction], in a good and workmanlike manner" of the self-storage facility in strict accordance with the terms of the Subcontract and the plans and specifications (the "Work"). (See the Subcontract attached hereto as Exhibit 2.) BPX was advised and on that basis understands that Wright Bros and its affiliated entities have been performing work as a commercial construction general contractor in Idaho and the surrounding states since at least 1986. BPX regularly visited the Project to supervise and coordinate the Work being performed by Wright Bros and the other subcontractors during construction.

15.     Upon information and belief, the Joinder alleges that "if McMillan Storage's allegations are accurate and the Project suffers from the defects claimed, those defects are attributable to Wright Bros' defective work and it has breached the Subcontract."

16.     Upon information and belief, the Joinder alleges that Wright Bros. must "indemnify BPX for any and all damages caused by its defective work. . . ."

17.     Upon information and belief, on or about October 12, 2020, the arbitrator ruled that Wright Bros. should be joined as a party to the Arbitration.

18.     Upon information and belief, on or about July 16, 2021, McMillan filed a
Supplemental Statement of Claims in which it alleged the following "List of Defects/Breaches":

    a.    "Concrete is missing required rebar reinforcement."

    b.    "Failure to install and properly install the correct anchor bolts."

    c.    "Concrete slabs are cracking."

    d.    "Failure to perform Special Inspections of concrete construction and anchor bolts."

    e.    "Failure to properly install rebar reinforcement in the thickened edge of the concrete slab."

    f.    "Failure to achieve timely Substantial Completion; misrepresenting the Substantial Completion status."

    g.    "Failure to obtain necessary permits and certificates of occupancy."

    h.    "Metal roofing, as constructed, does not comply with building code requirements."

    i.    "Metal roofing is not applied in accordance with Federal Steel System installation instructions."

    j.    "Improper construction at roof ridges."

    k.    "Improper construction at roof eaves."

    l.    "Improper construction at roof panel end laps."

    m.    "Improper installation of roof insulation."

    n.    "Other improper roof installation conditions."

    o.    "Failure to install sand, vapor barrier, and crushed aggregate beneath the concrete slabs."

    p.    "Use of inferior/cheaper materials without approval and without crediting McMillan."

    q.    "Improper installation of concrete apron."

    r.    "Unsubstantiated use of Contingency."

s.      "Failure to achieve necessary approvals from Settlers Irrigation District."

t.      "Partition walls lack corner closure pieces."

u.      "Unit firewalls are missing required metal paneling."

v.      "Concrete slabs not cleaned or etched."

w.      "Units are missing closure strips and foam fillers."

x.      "Failure to clean up the Project site."

y.      "Building Envelope."

z.      "Storage unit partition walls do not run to the ceiling."

aa.     "Office/Manager's unit contains several defects and incomplete work."

bb.     "Concrete Masonry Units (CMUs) and wall intersections are incomplete."

cc.     "Framing members are bent."

dd.     "Concrete areas are improperly sloped, causing drainage into the storage units in Buildings L and K."

ee.     "Some perimeter base angles are missing."

ff.     "Other non-roof related defects."

gg.     "Omission of work required by Contract Documents without crediting McMillan."

19.     Upon information and belief, on or about March 7, 2022, McMillan filed a First Amended Complaint in the Underlying Arbitration. Allegedly, as of the date of the Amended Complaint, "the Project is yet to be physically completed, and all the requisite approvals, including a significant one from Settlers Irrigation District, have yet to be obtained."

20.     Upon information and belief, the Amended Complaint seeks damages "currently estimated . . . between $5,000,000 and $10,000,000."

21.     Upon information and belief, the Amended Complaint alleges that:

BPX and WB [Wright Bros.] had privately planned and implemented a scheme to defraud McMillan. As explained in detail below, BPX's and WB's fraud damaged McMillan because McMillan paid BPX's and WB's inflated charges, approved WB's fraudulent change orders through its approval of BPX's change orders and contingency charges, and – most importantly – was left with a Project purposefully built in an inferior, defective, and deficient manner.

22.     Upon information and belief, the Amended Complaint alleges that the fraud scheme "included purposefully building an inferior Project 'regardless of what the architectural[ drawings] *[sic]* say' and never issuing deductive change orders to McMillan when unilateral changes to the scope of work (not approved by McMillan) reduced the cost of the Project." (non-italicized parentheticals in original).

23.     Upon information and belief, the Amended Complaint alleges, "While negotiating the Subcontract, BPX sent WB a letter on August 1, 2018. In its letter, BPX informed WB that WB's proposal was too 'simple and easily deciphered.' BPX instructed WB to produce a more 'complicated' proposal 'so I can hide your exclusions that will allow you to access contingency funds while ultimately not changing your scope, with my assistance.'"

24.     Upon information and belief, it is alleged in the Amended Complaint that "WB intentionally excluded rebar reinforcement from the foundation".

25.     Upon information and belief, other alleged issues with the project were alleged to have been intentionally performed below standard in order to cut costs.

26.     Upon information and belief, the Amended Complaint brings a claim directly against Wright Bros. for Fraud.

27.    The Underlying Arbitration was not tendered to American Hallmark until February 14, 2023, approximately three years after it was first filed and Wright Bros. were joined, and just two months before the Arbitration is to be held on April 10, 2023.

28.    American Hallmark currently is defending Wright Bros. under a full reservation of rights.

29.    Upon information and belief, the discovery period in the Underlying Arbitration closed on March 3, 2023 although certain discovery deadlines had passed earlier on February 10, 2023.

30.    Due to Wright Bros.' violation of the Policy's Notice Provision by providing unreasonably late tender, American Hallmark was not, among other things, able to investigate or control the defense by choosing defense experts, adding necessary parties to the Underlying Arbitration, interviewing witnesses, or conducting discovery.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment – Duty to Defend)

31.    American Hallmark realleges and incorporates by reference all previous paragraphs.

32.    An actual controversy exists between American Hallmark and Wright Bros. related to whether American Hallmark has a duty to defend Wright Bros. in the Underlying Arbitration under the Policy. Namely, American Hallmark does not believe it owes a duty to defend but Wright Bros. apparently believes it is owed a defense from American Hallmark.

33.    American Hallmark has no duty to defend Wright Bros. under the Commercial General Liability coverage form in the Policy because, among other reasons, there was no

"property damage" or "occurrence", because the damage was known to have occurred, in whole or in part, prior to a policy period and/or because one or more of the exclusions in the Commercial General Liability coverage form applies, including but not limited to Exclusions 2.a., 2.b., 2.j.(5)-(6), 2.k., 2.l., 2.m., 2.n. and/or the Fungi or Bacteria Exclusion and the Exclusion – Exterior Insulation And Finish System, both of which were added by endorsement.

34.    American Hallmark has no duty to defend Wright Bros. under Coverage A of the Commercial Umbrella Liability coverage form in the Policy because, among other reasons, the "underlying insurance" is not exhausted, there was no "injury" or "occurrence", the "underlying insurance" does not apply, due to the application of one or more of the exclusions in the Commercial General Liability coverage form which are integrated into Coverage A and/or because one or more of the exclusions in the Commercial Umbrella Liability coverage form's Coverage A applies.

35.    American Hallmark has no duty to defend Wright Bros. under Coverage B of the Commercial Umbrella Liability coverage form in the Policy because, among other reasons, there was no "injury" or "occurrence" and/or because one or more of the exclusions in the Commercial Umbrella Liability coverage form's Coverage B applies, including but not limited to Exclusions 2.a, 2.b., 2,.c., 2.h., 2.i., 2.j., 2.k., 2.n., 2.r. and/or the Fungi or Bacteria exclusion added by endorsement.

36.    American Hallmark also has no duty to defend because Wright Bros. did not timely notify American Hallmark of the Underlying Arbitration. This delay violated conditions precedent to coverage and also caused harm to American Hallmark.

37.     Pursuant to 28 U.S.C. § 2201, American Hallmark is entitled to a declaration by this Court of its rights and duties related to the defense of Wright Bros. in the Underlying Arbitration under the Policy.

38.     There may be other reasons that no duty to defend exists not expressly alleged in this Complaint, and American Hallmark incorporates into this Complaint all terms, exclusions and conditions of the Policy as if fully stated herein and reserves the right to rely on and allege any provision of the Policy.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment – Duty to Indemnify)

39.     American Hallmark realleges and incorporates by reference all previous paragraphs.

40.     An actual controversy exists between American Hallmark and Wright Bros. related to whether American Hallmark has a duty to indemnify Wright Bros. in the Underlying Arbitration under the Policy for any potential liability in the Underlying Arbitration. Namely, American Hallmark does not believe it owes a duty to indemnify but Wright Bros. apparently believes it is owed indemnity from American Hallmark for potential liability in the Underlying Arbitration.

41.     American Hallmark has no duty to indemnify Wright Bros. under the Commercial General Liability coverage form in the Policy because, among other reasons, there was no "property damage" or "occurrence", because the damage was known to have occurred, in whole or in part, prior to a policy period and/or because one or more of the exclusions in the Commercial General Liability coverage form applies, including but not limited to Exclusions 2.a., 2.b.,

2.j.(5)-(6), 2.k., 2.l., 2.m., 2.n. and/or the Fungi or Bacteria Exclusion and the Exclusion – Exterior Insulation And Finish System, both of which were added by endorsement.

42.     American Hallmark has no duty to indemnify Wright Bros. under Coverage A of the Commercial Umbrella Liability coverage form in the Policy because, among other reasons, the "underlying insurance" is not exhausted, there was no "injury" or "occurrence," the "underlying insurance" does not apply, due to the application of one or more of the exclusions in the Commercial General Liability coverage form which are integrated into Coverage A and/or because one or more of the exclusions in the Commercial Umbrella Liability coverage form's Coverage A applies.

43.     American Hallmark has no duty to indemnify Wright Bros. under Coverage B of the Commercial Umbrella Liability coverage form in the Policy because, among other reasons, there was no "injury" or "occurrence" and/or because one or more of the exclusions in the Commercial Umbrella Liability coverage form's Coverage B applies, including but not limited to Exclusions 2.a, 2.b., 2,.c., 2.h., 2.i., 2.j., 2.k., 2.n., 2.r. and/or the Fungi or Bacteria exclusion added by endorsement.

44.     American Hallmark also has no duty to indemnify because Wright Bros. did not timely notify American Hallmark of the Underlying Arbitration. This delay violated conditions precedent to coverage and also caused harm to American Hallmark.

45.     Pursuant to 28 U.S.C. § 2201, American Hallmark is entitled to a declaration by this Court of its rights and duties related to the potential indemnification of Wright Bros. in the Underlying Arbitration under the Policy.

46.     There may be other reasons that no duty to indemnify exists not expressly alleged in this Complaint, and American Hallmark incorporates into this Complaint all terms, exclusions and conditions of the Policy as if fully stated herein and reserves the right to rely on and allege any provision of the Policy.

WHEREFORE, Plaintiff prays for judgment as follows:

1.     A declaration that American Hallmark does not owe Wright Bros. a defense in the Underlying Arbitration under the Policy;

2.     A declaration that American Hallmark may immediately withdraw its defense of Wright Bros. in the Underlying Arbitration;

3.     A declaration that American Hallmark does not owe Wright Bros. a duty to indemnify for any potential liability in the Underlying Arbitration under the Policy; and

4.     For such other relief that the Court deems just and proper.


DATED this 23rd day of March, 2023.

THE CHARTWELL LAW OFFICES, LLP

By  /s/ David P. Rossmiller
**David P. Rossmiller, ISB No. 8591**
Email: drossmiller@chartwelllaw.com
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Telephone: 503-886-8108
Facsimile: 503-961-7864

*Attorneys for Plaintiff American Hallmark*
*Insurance Company of Texas*